ALARM DEVICE MANUFACTURING COMPANY, APPELLEE, *v.*
ARNOLD INDUSTRIES, INC., APPELLANT.

[Cite as Alarm Device Mfg. Co. v. Arnold Industries (1979),
65 Ohio App. 2d 256.]

(No. L-78-312—Decided October 26, 1979.)

*Mr. Stewart H. Aron,* for appellee.
*Mr. Barry E. Savage,* for appellant.

BROWN, J.   Defendant-appellant, Arnold Industries, Inc.,
appeals from a finding in a non-jury trial in the Court of Com-
mon Pleas of Lucas County in the sum of $8,618.99, with in-

terest, in favor of the plaintiff-appellee, Alarm Device Manufacturing Company.

Plaintiff had its place of business at Syosset, New York. Defendant did business at 3011 Council Street, Toledo, Ohio. Taos Equipment Company manufactured wood splitters using steel screws, which had been sold by plaintiff to defendant. Taos Equipment Company was based at Taos, New Mexico.

The final judgment for plaintiff arises from a claim on a contract between plaintiff, as seller, and defendant, as buyer, for the sale of 10,000 steel screws and brass washers at 85 cents each, *i.e.*, $8,500 total.

On August 17, 1977, Taos Equipment Company, hereinafter referred to as Taos, sent a written purchase order to plaintiff specifying the purchase of 10,000 steel screws and brass washers at 85 cents each for a total amount of $8,500, directed to the attention of Murray Hauer, credit manager of plaintiff. After a credit check by Mr. Hauer, plaintiff decided it would not extend credit to Taos. Taos then informed plaintiff that the defendant was the party to whom this merchandise should be charged. Defendant's credit was checked by plaintiff and considered sufficient for sales up to $7,500.

Thereupon, plaintiff telephoned defendant to confirm the order for merchandise ordered by Taos. Defendant's president, George Blackstone, told plaintiff's credit manager, Mr. Hauer, that 20,000 units (screws) were needed. The parties orally, through Blackstone and Hauer, established a $7,500 credit line for defendant for merchandise sold by plaintiff, and agreed that plaintiff was to ship and bill all merchandise to the defendant. The parties agreed that defendant, and not Taos, was the buyer and that defendant was to receive and pay for the merchandise sold to it by plaintiff.

In accordance with the foregoing oral agreement between plaintiff and defendant, plaintiff sent four shipments to defendant for a total of 20,000 units. The first shipment of 2,000 units for $1,700 contained plaintiff's invoice form, dated August 30, 1977, and was shipped on September 2, 1977. The second shipment of 8,000 units for $6,800 contained plaintiff's invoice form, dated August 30, 1977, and was shipped on September 13, 1977. Defendant paid in full for both shipments.

The third shipment of 7,000 units for $5,950 contained

plaintiff's invoice form, dated September 19, 1977, and was shipped on September 29, 1977. Defendant issued a check for the full amount, dated November 1, 1977, for this shipment, but, stopped payment. Plaintiff received notice of the stop payment on November 30, 1977. A fourth shipment of 3,067 units for $2,606.95 contained plaintiff's invoice form, dated October 14, 1977, and was shipped on October 19, 1977. There was no written purchase order from either defendant or Taos for these last two shipments for slightly in excess of 10,000 units. Although Taos initiated the purchase of the first 10,000 units by a written purchase order, plaintiff contends, based on Hauer's testimony, that the second 10,000 units were shipped based on defendant's telephone order.

Defendant acknowledges that it received all four shipments and that it has not returned any merchandise to plaintiff. Plaintiff has not received any payment for these last two shipments for a total of $8,556.95. A reconsignment of goods to Taos in New Mexico to defendant in Toledo in the sum of $62.04 made plaintiff's total claim against defendant $8,618.99.

Plaintiff never received a notice of rejection from defendant. However, a letter, dated November 22, 1977, from defendant's attorney, Barry Savage, notified plaintiff that defendant contended that the obligation arising from the foregoing sale belonged to Taos, without any authority from defendant.[1]

---

[1] Salient portions of the November 22, 1977, letter of Attorney Savage read as follows:

"***[A]s it appears, the subject matter of the invoices relates to purchase orders directed to your company by Taos Equipment Manufacturing, Inc., Taos, New Mexico.

"***[N]o purchase orders were directed to you by Arnold Industries, Inc.*** and accordingly, Arnold Industries, Inc. has been advised by us not to make payment.*** Further, if you have any other documents in your possession indicating liability on the part of Arnold Industries, Inc., please provide the undersigned with copies of same for review.

"***[T]he obligation was incurred by Taos Equipment Manufacturing, Inc., Taos, New Mexico, without any authority or approval on the part of Arnold Industries, Inc.***

"In the event you receive payment of any invoices by Arnold Industries, Inc. for which you do not have purchase orders, it will be our position that these invoices were paid in error, and Arnold Industries, Inc. would expect and demand reimbursement.***

"***[A]ny attempts by your company to collect the balance claimed due upon invoices which are the subject of this letter will be vigorously resisted on behalf of Arnold Industries, Inc.,***."

The trial court made detailed findings of fact, separate from conclusions of law. Defendant's six assignments of error,[2] except for the third assignment of error, in essence, attack the separate findings and the final judgment, as being either not sustained by sufficient evidence or as being contrary to law, or both.

All six assignments of error are not well taken, and the final judgment is affirmed for the following reasons.

The first assignment of error attacks the trial court's finding that R. C. 1302.04[3] does not apply as a defense to plaintiff's claim against defendant.

Relevant to consideration and application of R. C. 1302.04

---

[2] The defendant's six assignments of error are as follows:

"1. The Trial Court committed error in finding that Section 1302.04 of the *Ohio Revised Code* does not apply as a defense to Alarm's claim against Arnold. [Emphasis *sic*.]

"2. The Trial Court committed error in the application and interpretation of Sections 1302.61 and 1302.64 of the *Ohio Revised Code*. [Emphasis *sic*.]

"3. The Trial Court committed error by rejecting testimony by Arnold as to its business relationship with Taos.

"4. The Trial Court made an erroneous finding of fact that Mr. Hauer's testimony was of more probative value.

"5. The Trial Court made an erroneous finding of fact that an installment sales contract based upon credit limitations existed.

"6. The judgment of the Trial Court was not sustained by the weight of the evidence."

[3] The relevant portion of R. C. 1302.04 (formal requirements; statute of frauds) provides as follows:

"(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

"(B) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of division (A) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

"(C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:

"* * *

"(3) with respect to goods for which payment has been made and accepted or which have been received and accepted in accordance with section 1302.64 of the Revised Code."

to the facts adduced, the trial judge made Findings of Fact and Conclusions of Law, which read, in part, as follows:

*"Findings of Fact*

"* * *

"13. That plaintiff satisfied the requirements of R. C. Section 1302.04 (B) and (C)(3) by sending written confirmation and by showing that defendant received and accepted the goods sold in accordance with R. C. Section 1302.64.

"14. Defendant as buyer never rejected any part of the goods.

"15. Defendant is a merchant.

"16. Defendant never notified plaintiff of a rejection of the goods shipped.

*"Conclusions of Law*

"1. Defendant may not rely on R. C. Section 1302.04 (Statute of Frauds) since:

"a. Plaintiff complied with R. C. Section 1302.04(B).

"b. Defendant received and accepted the goods in accordance with R. C. Section 1302.04(C)(3).

"2. Defendant had a duty to reject the goods shipped after delivery; such rejection is ineffective unless defendant seasonably notifies plaintiff in accordance with R. C. Section 1302.61(A).

"3. Defendant's acceptance of the goods occurred when it failed to make an effective rejection in accordance with R. C. Section 1302.64(A)(2)."

R. C. 1302.04(A) requires "* * * some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent* * *" before a contract for the sale of goods for a price of $500 or more may be enforced by way of action or defense. R. C. 1302.04(A) must be construed in *pari materia* with R. C. 1302.04(B). R. C. 1302.04(B) provides that the requirements of R. C. 1302.04(A) are satisfied, between merchants, if "* * * a writing in confirmation of the contract and sufficient against the sender [the seller] is received and the party receiving it [in this case the buyer] has reason to know its contents,* * * unless [the party receiving it gives] written notice of objection to its contents* * * within ten days after it is received." Thus, if the re-

quirements of R. C. 1302.04(B) are satisfied, then the Statute of Frauds defense may not be effectively asserted.

In construing the meaning of R. C. 1302.04(B), a seller's invoice containing a letterhead, quantity designations, and price terms, even though not signed by the seller, has been held to have been a sufficient "writing in confirmation of the contract" of sale obligating the buyer to object to its contents within ten days after the seller's invoice was received. *Associated Hardware Supply Co.* v. *Big Wheel Distributing Co.* (C.A. 3, 1966), 355 F. 2d 114. Cf. *Campbell* v. *Yokel* (1974), 20 Ill. App. 3d 702, 313 N.E. 2d 628; *Automotive Spares Corp.* v. *Archer Bearings Co.* (N.D. Ill. 1974), 382 F. Supp. 513. Defendant, in the case *sub judice,* did not make such a rejection within ten days. Even if defense counsel's letter of November 22, 1977, is construed as a "notice of objection," it was not given until more than two months after the first disputed shipment and invoice (the third shipment) was sent, and more than one month after the second disputed shipment and invoice (the fourth shipment) was sent. Therefore, R. C. 1302.04 (the Statute of Frauds) does not bar this lawsuit.

Even where the provisions of R. C. 1302.04(A), which requires a sufficient writing to indicate a contract, are not satisfied, a contract for the sale of merchandise may be enforced between the parties if the buyer received and accepted the goods in accordance with R. C. 1302.64. See R. C. 1302.04(C)(3). Defendant, in the present case, received and accepted the goods in accordance with R. C. 1302.64, and the trial judge correctly so determined in Finding of Fact No. 13, *supra.*

R. C. 1302.64 (what constitutes acceptance of goods), which is applicable to Finding of Fact No. 13, provides, in part, as follows:

"(A) Acceptance of goods occurs when the buyer:

"(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"(2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(3) does any act inconsistent with the seller's ownership;

but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

Defendant's conduct in the present case, in keeping the goods and not making a rejection in compliance with R. C. 1302.61(A), constituted an acceptance under R. C. 1302.64(A). Accordingly, the trial court correctly determined in Conclusion of Law No. 2, *supra,* that defendant did not make a valid rejection of the goods as required by R. C. 1302.61(A),[4] and likewise correctly concluded that defendant accepted the goods under the provisions of R. C. 1302.64. See *Clifton Cattle Co.* v. *Thompson* (1974), 43 Cal. App. 3d 11, 117 Cal. Rptr. 500; *Don's Marine, Inc.,* v. *Haldeman* (Tex. Civ. App. 1977), 557 S.W. 2d 826. Thus, the trial court correctly found that the Statute of Frauds was not a valid defense because the plaintiff fell under the exceptions created in R. C. 1302.04(B) and (C)(3).

R. C. 1302.04(B) indicates a legislative intent "***to not allow the Statute of Frauds to act as***[an inflexible] bar in situations wherein merchants by their conduct and normal course of dealings enter contracts which ***[are] verbal at the outset." *Automotive Spares Corp., supra,* at page 515. See, also, Official Comment No. 3 to Section 2—201, Uniform Commercial Code.

Our foregoing judicial determination disposes of defendant's first, second and sixth assignments of error and compels the conclusion that the trial court correctly determined that the defendant could not assert the defense of the Statute of Frauds to bar enforcement of the contract entered into by the parties.

---

[4] Defendant, as buyer, failed to reject the goods in the manner required by R. C. 1302.61 (manner and effect of rightful rejection) which provides, in part, as follows:

"(A) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

"(B) Subject to the provisions of section 1302.62 of the Revised Code:

"(1) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

"(2) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of division (C) of section 1302.85 of the Revised Code, he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

"(3) the buyer has no further obligations with regard to goods rightfully rejected."

The remaining assignments of error are peripheral, and our disposition of these assignments either way does not affect resolution of this case.

The third assignment of error concerns claimed error in the rejection of testimony by defendant as to its business relationship with Taos and is not well taken. The excluded testimony involved other transactions wherein defendant alleged that Taos ordered goods from other vendors on defendant's credit without its approval. Such facts were irrelevant to the issues in the case at bar.

The fourth assignment of error attacks the trial court's finding that Hauer's testimony was of more probative value. The issue of probative value of testimony involves the weight of the evidence and credibility of witnesses and is a proper matter for the trier of facts (the judge in the non-jury trial herein) to determine. *Swan* v. *Skeen* (1974), 40 Ohio App. 2d 307; *Baynes* v. *McKee* (1951), 67 Ohio Law Abs. 95.

The fifth assignment of error attacks the trial court's finding that an installment sales contract, based upon a credit line, existed. Defendant's contentions are based upon the first assignment of error and its proper disposition, and upon the credit limit of $7,500, which defendant claims refutes an installment sales contract. First, the Hauer testimony reveals that the $7,500 credit limit was only a self-imposed guideline for plaintiff. In addition, whether the transaction in dispute constituted, or is designated, an installment sales contract does not affect the legal propositions governing the obligation of the defendant, as buyer, to the plaintiff, as seller, as is set forth in the disposition of the first, second and sixth assignments of errors, *supra*. The third, fourth and fifth assignments of error are, therefore, not well taken.

For the foregoing reasons, the judgment of the Court of Common Pleas of Lucas County is hereby affirmed.

*Judgment affirmed.*

POTTER, P. J., and CONNORS, J., concur.