DEGNAN, Appellant,

v.

GOODWILL INDUSTRIES OF TOLEDO, Appellee.

[Cite as *Degnan v. Goodwill Industries of Toledo* (1995), 104 Ohio App.3d 589.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–250.

Decided June 23, 1995.

590

*Terry Lodge,* for appellant.

*James Yates,* for appellee.

---

SHERCK, Judge.

This appeal comes to us from a summary judgment granted by the Lucas County Court of Common Pleas in favor of an employer in a handicap discrimination case. Because we conclude that genuine issues of material fact exist, we reverse the judgment of the trial court.

In October 1989, appellant, Dennis P. Degnan, began working for appellee, Goodwill Industries, Inc. At the time of his hiring, appellee was aware that appellant was designated as "permanently partially disabled" and suffered from chronic pain as a result of a previous back injury sustained while employed by Toledo Edison. Appellant first worked as a sales engineer for appellee's sheltered workshop; later in 1989, he was promoted to supervisor of contract services. According to appellant, his supervisors assured him that the company "would be able to work around [his] limitations" relating to his handicap. Appellant's new duties involved the supervision of all sheltered subcontract workers and all jobs performed in the Industrial Contract Department. His duties required maintaining discipline, encouraging worker productivity, establishing standard production rates to improve efficiency, alleviating anticipated delays, maintaining procedure sheets, preparing job quotations, maintaining custom files, purchasing raw materials for orders, obtaining and conferring with vendors as to tooling and fixtures for jobs, setting up and maintaining an inventory control program, monitoring quality control, and performing various other duties regarding contracts with customers. Appellant's office was located close to the work production floor area. In addition, a "lead worker," Dave Kaminski, was utilized by appellant to serve as a runner between appellant's office and the production line, as well as other parts of the manufacturing area.

In late 1992, appellee hired Dave Roper to improve the efficiency and profitability of the subcontract department. Roper made many changes to the management of the subcontract division. Appellant's office was moved away from the shop floor to an area of the basement adjoining Roper's own office. In addition, the lead worker was reassigned to another position, eliminating appellant's former access to the assistance of a runner. Roper allegedly now expected appellant to spend much of his time out "in the shop moving from position—from work station to work station." Roper also made other changes which essentially limited appellant's previous authority and control over various aspects of the production line. In December 1992, January 1993, and March 1993, appellant

complained to a supervisor, Tom Miller, that the changes in his duties and the removal of the runner were causing his back injuries to flare up. On January 20, 1993, appellant began a company approved leave of absence which continued until March 2, 1993; this leave of absence was due to the aggravation of his back condition. Appellant returned to work without medical restrictions; however, within one day, appellant was restricted to standing for no longer than an hour at a time and lifting no more than five pounds of weight.

Upon appellant's return, Roper informed him of performance deficiencies in a written disciplinary report entitled "documentation of personnel action," dated March 3, 1993. According to this report, Roper had verbally discussed with appellant his job performance on two separate dates in December 1992. At that time, Roper noted dissatisfaction with appellant's efforts in controlling downtime, start times, preplanning, job setups, and utilization of manpower. The report also referred to a January 11, 1993 memo to appellant; in that memo Roper indicated his intent to "put together a totally new system" to improve efficiency. Roper, also in the January memo, expressed dissatisfaction with appellant's preplanning, downtime, monthly evaluation form filing, housekeeping in the work area, and enforcement of signals for breaks, lunch, and cleanup. In the March 3, 1993 document, Roper noted that appellant had also been informed about preplanning problems on January 13, 1993. Roper also commented that "[o]n Jan. 20, 1993, you left early to see a doctor, and did not return to work until March 2, 1993." Roper continued by admonishing appellant about several deficiencies in his work performance on his first day back. As a result of these deficiencies, Roper gave appellant a one-day suspension without pay and advised him that any further poor performance would "result in additional disciplinary action up to and including termination."

On March 8, 1993, after returning from his one-day suspension, appellant was again written up for "poor work performance," failure to preplan, and failure to properly utilize his work force. Appellant was given a four-day suspension without pay for these deficiencies, extending from March 9, 1993 to March 12, 1993. Appellant appealed both suspensions to Thomas Miller, controller, and received a written response on March 12, 1993. Miller acknowledged appellant's complaints that the new job arrangements had aggravated his pre-existing back problems. Miller disagreed, however, that appellant's medical restrictions prevented him from performing his new duties. Miller, referring to the incidents which Roper had included in his written disciplinary documents dated March 3 and March 8, 1993, upheld the suspensions and requested appellant's resignation effective March 15, 1993. Appellant then appealed this decision to David R. Stewart, the president of Goodwill. After a "hearing" on March 18, 1993, Stewart upheld Miller's decision.

Appellant filed suit against appellee on April 13, 1993, alleging wrongful termination due to his handicap. Appellee moved for summary judgment; appellant responded. The trial court granted summary judgment in favor of appellee, ruling that although appellant had established a *prima facie* case of handicap discrimination, appellant had failed to prove that appellee's legitimate nonhandicap reasons were a mere pretext.

Appellant now appeals that judgment, setting forth the following two assignments of error:

*"Assignment of Error No. 1:*

"It was error for a trial court to weigh the evidence on summary judgment."

*"Assignment of Error No. 2:*

"The trial court erred in failing to consider employer efforts at reasonable accommodation as part of the determination of whether there was 'just cause' for termination."

## I

Appellant, in his first assignment of error, argues that the court improperly weighed the evidence on summary judgment.

The standard of review of a motion for summary judgment is the same for both a trial court and an appellate court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Initially, the party requesting summary judgment bears the burden of delineating "the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party has met its burden, the nonmoving party bears a reciprocal burden to produce evidence on any element essential to his case for which he bears the burden of proof at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. The trial court shall then grant summary judgment if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

Ohio's employment discrimination act, R.C. 4112.02(A), provides, in part:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * handicap * * * of any person to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Granting a motion for summary judgment in a handicap discrimination case is improper if the plaintiff demonstrates that there are genuine issues of material fact as to whether "(1) he is handicapped, (2) action was taken by his employer (at least in part) because he was handicapped, and (3) even though plaintiff is handicapped, he can safely and substantially perform the essential functions of the job in question with reasonable accommodations." *Wooten v. Columbus* (1993), 91 Ohio App.3d 326, 332, 632 N.E.2d 605, 608, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, and *Asplundh Tree Expert Co. v. Ohio Civ. Rights Comm.* (1991), 68 Ohio App.3d 550, 589 N.E.2d 102.

Appellant, in support of his *prima facie* claim for handicap discrimination, presented undisputed evidence that he is handicapped within the meaning of the statute and that appellee had full knowledge of this condition upon his initial hiring date. Therefore, appellant satisfied the first element of a prima facie claim of handicap discrimination.

Next, appellant alleged (both in his deposition and affidavit in opposition to appellee's motion for summary judgment) that the changes made by Roper in the operations (including the removal of the runner), the relocation of appellant's office, and the alleged expectation that appellant remain on his feet for long periods of time or lift heavy objects aggravated his back injury. Appellant argues that Roper's actions failed to reasonably accommodate appellant's handicap and hindered appellant's ability to perform his duties. Appellant also asserts that his complaints about his need for a runner and the conditions which aggravated his back injury went essentially unresolved until he was suspended and then terminated. Moreover, according to appellant, Roper's disciplinary report of March 3, 1993, makes negative reference to appellant's handicap condition by commenting that appellant left work early for a doctor's appointment and was on leave for six weeks. In essence, appellant asserts that the actions of appellee were discriminatory based upon his handicap.

Appellee, in its motion for summary judgment, argued that it accommodated appellant's restrictions. Further, appellee claims that appellant was not required to stand for longer than one hour or to lift heavy objects. Appellee also argued that it had legitimate business reasons for terminating appellant, as evidenced by the reports issued by Roper.

In reviewing the entire record before the trial court, we conclude that reasonable minds could differ as to whether appellant was the subject of handicap discrimination. Therefore, appellee has not met its burden in demonstrating that there exist no genuine issues of material fact on this issue.

Finally, to support a claim of handicap discrimination, appellant must present evidence that, in spite of his handicap, he can safely and substantially perform the essential functions of his former position with reasonable accommodations.

"Reasonable accommodations include but are not limited to job restructuring, acquisition or modification of equipment or devices, realignment of duties, revision of job descriptions or modified and part-time work schedules. Ohio Adm. Code 4112–5–08(E)(2). Accommodations for handicapped workers are unreasonable only if they place an undue hardship on the employer. The burden of showing undue hardship is upon the employer." *Wooten, supra,* 91 Ohio App.3d at 333–334, 632 N.E.2d at 609–610.

In the present case, appellee contended in its motion for summary judgment that appellant had been terminated for legitimate business reasons. Although appellee pointed to Roper's complaints that appellant's work performance was deficient in various ways, nothing in the record indicates any evaluations revealing deficiencies for approximately three years prior to Roper's arrival and the ensuing changes in appellant's duties and working conditions. Appellant stated that, prior to the removal of his runner and the changes made by Roper, he was able to perform his job duties. He further maintained that the accommodations suggested by appellee, such as the use of a wheelchair or taking breaks, were not practical options. Appellant also asserted that, upon seeing appellant in his office, Roper would tell appellant to return to the work floor; this allegedly limited the amount of break time allowed to accommodate appellant's handicap condition. Therefore, we conclude that genuine issues of material fact also exist as to whether appellant's performance was deficient, and, if so, whether the deficiencies were caused by the removal of, or could have been remedied by, reasonable accommodations provided by appellee.

In this case, we note that the trial court also determined that appellant had established a prima facie case of handicap discrimination, and then went on to apply the *McDonnell Douglas* test[1] to grant summary judgment to appellee. However, the application of that test on summary judgment in

---

1. Evidentiary standards as to the burdens of proof in race discrimination cases were set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. These standards consist of a three-part test. First, the plaintiff must establish a prima facie case of discrimination. Second, the burden then shifts to the employer to provide a

handicap discrimination cases of this type is misplaced.[2] It is misplaced because when a party sets forth the essential elements which establish a prima facie case of handicap discrimination, the issues presented in the second and third prongs of the *McDonnell Douglas* test are, in effect, dealt with: that is, whether the discharge was due to a legitimate business reason or was pretext. See *Hazlett, supra*. When the determination of these issues involves the weighing of evidence and judging the credibility of witnesses the determination is a matter for the trier of facts, and summary judgment may not be granted. See *Alarm Device Mfg. Co. v. Arnold Indus.* (1979), 65 Ohio App.2d 256, 263, 19 O.O.3d 241, 246, 417 N.E.2d 1284, 1289. We conclude that a prima facie demonstration of handicap discrimination precludes a grant of summary judgment.

Therefore, construing the evidence most favorably to appellant, we determine that the trial court improperly weighed the evidence and judged the credibility of the witnesses as to whether appellant was the subject of handicap discrimination. Accordingly, appellant's first assignment of error is well taken.

## II

Appellant, in his second assignment of error, asserts that the trial court erred in failing to consider employer efforts at reasonable accommodations as part of the determination of whether there was just cause for termination.

Based upon our discussion of the first assignment of error, we conclude that whether reasonable accommodations were made is an essential part of the third element of a prima facie case of handicap discrimination. Therefore, the trial court erred in failing to consider that issue when ruling on summary judgment.

Accordingly, appellant's second assignment of error is well taken.

The judgment of the Lucas County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.

*Judgment reversed.*

HANDWORK and GLASSER, JJ., concur.

---

legitimate, nondiscriminatory reason for its actions. Finally, the burden shifts back to the plaintiff to present evidence that the actions were pretext.

**2.** The Supreme Court of Ohio has generally approved the application of the *McDonnell Douglas* standards to discrimination cases brought under R.C. 4112.02. See *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807. The *McDonnell Douglas* test has been specifically applied to race, gender and age discrimination cases. However, the *prima facie* elements of a handicap discrimination case were specifically set forth by the Supreme Court of Ohio in *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478. Therefore, in our view, when determining handicap discrimination cases, *Hazlett* is the applicable standard, rather the *McDonnell Douglas* test.