Jeffrey T. DAWSON, Plaintiff,

v.

QUBE CORPORATION, Defendant.

No. 1:97–CV–0027.

United States District Court,
N.D. Ohio,
Eastern Division.

May 18, 1998.

James F. Koehler, Ernest W. Auciello, Jr., Timothy P. Whitford, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Jeffrey T. Dawson.

John F. King, James A. Hofelich, Hofelich & King, Cleveland, OH, for Qube Corp.

## OPINION AND ORDER

GWIN, District Judge.

On March 26, 1998, Defendant Qube Corporation ("Qube") filed a motion for summary judgment against Plaintiff Jeffrey Dawson [Doc. 40]. Plaintiff Dawson's complaint states three claims for relief: Count I states a claim for wrongful termination violating the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* Count II states a claim for wrongful termination violating the Ohio Employment Discrimination Act, Ohio Rev.Code § 4112.02(A); Count III makes a claim for breach of contract based upon promissory estoppel [Doc. 1]. In its motion, Qube seeks judgment on all three of Plaintiff Dawson's claims.

In ruling on Qube's motion for judgment, this Court first decides whether nonspecific discussions of future work possibilities support a claim of promissory estoppel. Then the Court decides whether direct or circumstantial evidence supports Plaintiff Dawson's claims of disability discrimination under federal or state law. In determining this, the Court examines whether Plaintiff Dawson was otherwise qualified to perform job requirements with accommodation.

For the reasons that follow, Defendant Qube's motion for summary judgment is granted as to Plaintiff Dawson's claim for promissory estoppel and denied as to Plaintiff Dawson's claims of handicap discrimination under federal and state law.

## I

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252, 258–59 (6th Cir.1998).

## II

Near November 29, 1994, the Defendant Qube Corporation fired Plaintiff Dawson from a sales position. Qube fired Dawson after he suffered a leg amputation in a plane crash. Plaintiff Dawson claims that Defendant Qube Corporation is estopped from firing him because of representations made to Dawson during his employment with Defendant Qube Corporation.

Defendant Qube Corporation is a start-up corporation. In November 1992, James Dawson[1] and Midwest Plastics Fabricators, Inc. ("Midwest") formed the Qube Corpora-

---

1. James Dawson is Plaintiff Jeffrey Dawson's father.

tion. Dawson, Midwest, William McCoy and Tom Moran own shares of Defendant Qube Corporation. As its primary business, Qube manufactures enclosures for electrical applications.

In February 1993, Qube hired Plaintiff Dawson as Qube's national marketing manager. As national sales manager, Dawson sold Qube's products and supervised the sales of Qube's products. Dawson shows evidence of success, including meeting sales goals.[2] While sales were strong, Qube had production problems that impaired profits.

On September 5, 1993, Plaintiff Dawson was badly injured in a small airplane crash. The crash occurred during take off. Woody Gonzales, Qube's plant production manager, piloted the plane and was killed in the crash. From the crash, Dawson was badly injured and he required several operations, including the amputation of his left foot.

In November 1993, Plaintiff Dawson returned to part-time work at Qube. In November 1994, Plaintiff Dawson spoke with McCoy about his return to work. Dawson wished to return as the marketing manager. McCoy suggested Dawson come back as an inside sales agent, to which Dawson objected. Dawson returned to work without a clear understanding of his position. Shortly after that, by letter dated November 29, 1994, McCoy terminated Dawson. Dawson says Defendant Qube is estopped from this firing because of statements made to Dawson during his employment.

Defendant Qube says Dawson's evidence is insufficient, as a matter of law, to support a claim of promissory estoppel or to give rise to an alternative claim for breach of an implied contract.

■ The Supreme Court of Ohio, with few exceptions, says that employment is "at-will." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). However, the court has recognized certain limited exceptions to this general proposition. In appropriate circumstances, the doctrine of promissory estoppel can alter the at-will nature of an employment contract. The courts in Ohio apply promissory estoppel "when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Id.* at 104, 483 N.E.2d 150.

■ A separated employee can make a claim under promissory estoppel, only if he proves his employer made a discrete promise relating to job security. *See Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991) (syllabus at 2) ("[A] promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine."); *Kasuri v. St. Elizabeth Hosp. Med. Ctr.*, 897 F.2d 845, 852 (6th Cir.1990) (deciding that Ohio promissory estoppel law requires a representation to be clear and unambiguous in its terms).

■ Plaintiff Dawson shows no clear or unambiguous evidence of a specific promise of future employment.[3] At best, Dawson

---

2. Qube gave Dawson a sales goal of $60,000.00 per month.

3. Dawson described only non-specific statements. He testified:

A. Then he (James Dawson) also said, "I'm not planning on being here for more than a year or two, so if you make this corporation go, and make it a success, you have the potential to be able to become president of this company."

. . . . .

Q. What was your understanding of the bonus program?

A. That once I had $60,000 a year—or $60,000 a month, excuse me, in sales, that I was able to renegotiate my contract.

.

Q. Okay. And those were the words used by either Bill McCoy or Tom Moran?

A. Yeah.

Q. Okay. Were they any more specific than that in your recollection?

A. Based on $60,000 a month in sales was the goal they wanted to reach.

Q. Okay. And, then, if you reached that agreement, both parties would sit down and renegotiate the terms of your compensation.

A. I felt that's what they were telling me.

Q. Okay. There were no specific terms discussed as to what those terms would be, just that you would sit down and discuss it at that point.

relies upon purported statements by Qube management, including those by his father, that if he met the monthly sales goals at Qube, he could renegotiate his compensation. He also relies on a vague statement that he might become president of the Qube Corporation. In this regard, Dawson says the extent to which he relied to his detriment upon these representations is a matter for a jury.[4] The Court disagrees.

The representations describing Plaintiff Dawson's potential future with Defendant Qube are insufficient to survive summary judgment. Specifically, these statements, though encouraging, are too indefinite to constitute a promise. Qube management did not promise to make Dawson the president of the company. Nor did they promise Dawson a permanent job with the company. Instead, the evidence shows that Dawson was only told that he had the *"potential to be able to become president* of this company." (emphasis added). In his deposition, Dawson acknowledges there were no specific terms to his employment with Qube, and that Qube could replace him if it became dissatisfied with his job performance. This is evidence of an employment at-will relationship.

Because Plaintiff Dawson fails to give evidence showing that his employment relationship with Defendant Qube was not at-will, his claim seeking to invoke the doctrine of promissory estoppel or, alternatively, breach of an implied contract, fails. Accordingly, the Court grants Defendant Qube's motion for summary judgment on Count III of the complaint.

### III

In Count I of his complaint, Plaintiff Dawson states a claim for wrongful termination violating the ADA, 42 U.S.C. § 12111, *et seq.* In Count II of his complaint, Dawson states a claim for wrongful termination violating the Ohio Employment Discrimination Act, Ohio Rev.Code § 4112.02(A). In seeking judgment as to these claims, Defendant Qube Corporation says Dawson was not physically capable of being employed. Claiming that Dawson was not physically capable of being employed even with accommodation, Defendant Qube Corporation says Dawson fails to make a *prima facie* case for disability discrimination. Alternatively, Defendant Qube says that McCoy terminated Dawson because of "his father's departure from the company, his background and experience, his lack of interest in the company, the poor financial condition of the company and his refusal to discuss with [McCoy] his return to work."

### A. Claim under 42 U.S.C. § 12111, *et seq.*

Under the ADA, an employer shall not discriminate against a qualified individual in any aspect or phase of employment on the basis of that employee's disability. An employer discriminates by failing to make reasonable accommodations to the known physical or mental limitations of a disabled employee or job applicant, unless accommodating would impose an undue hardship on the employer's business. The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A. Correct.

.  .  .  .  .

Q. Okay. When they made this job offer to you, did they make you any promise as to the duration of your employment, how long you would be there?

A. No. No promises.

.  .  .  .  .

Q. When your father told you you would have the opportunity to become president, you don't claim he guaranteed you that, do you?

A. No. Like I testified before, and today, is that he said, "If you can get this thing up and running, and I know you can do it. You can do it. If you can get us to $60,000 grand a month in sales, boy, you can go there and we'll redo the contract and we'll talk about other things we can do for you," and da, da, da, da, so that's my total understanding of my relationship with Qube.

4. Plaintiff Dawson says these statements induced him to leave his job at McCormick & Associates in Atlanta, Georgia and to relocate to Cleveland, Ohio to work for Qube at a time when he was not in need of, or looking for, other employment.

To fall within the ADA's protection, disabled persons must show that they can perform the essential functions of the positions they seek, with or without reasonable accommodation.[5] When determining which functions of a job are essential, the ADA directs a court to consider the employer's judgment. If a disabled person cannot perform the essential functions of a position, even with reasonable accommodations, that employee does not fall within the ADA's protection and may lawfully be denied employment.

■ To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) he is an individual with a disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he was discharged solely by reason of his handicap. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1180 (6th Cir.1996). In *Monette,* the Sixth Circuit stated the burden-shifting analysis under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), does not apply when direct evidence of discrimination exists. *Id.* at 1182–83. See also *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 549 (6th Cir.1991)

("Direct evidence of discrimination allows a plaintiff to proceed without meeting the requirements of a *prima facie* case set forth in *McDonnell Douglas.").*

■ In the instant case, there is no dispute that Plaintiff Dawson is disabled. Dawson clearly has a physical impairment substantially limiting one or more of his major life activities. 42 U.S.C. § 12102(2)(A). There is also no dispute that Qube is aware of Dawson's physical handicap. However, the parties dispute whether Plaintiff Dawson is "otherwise qualified" to perform his job responsibilities with Qube—the third prong of the *Monette* analysis.

■ In determining whether a plaintiff with a disability or handicap can fulfill normal job functions, courts evaluate whether the individual meets the prerequisites for the job, such as education, training, experience, etc., and whether the individual can perform the essential job functions with or without reasonable accommodation. See 42 U.S.C. § 12111(8).

Defendant Qube Corporation says that Dawson made statements during application for social security and workers compensation

5. 42 U.S.C. § 12111 provides, in part:

(8) Qualified individual with a disability
The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.
(9) Reasonable accommodation
The term "reasonable accommodation" may include—
(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
(10) Undue hardship

(A) In general
The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).
(B) Factors to be considered
In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include—
(i) the nature and cost of the accommodation needed under this chapter;
(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

benefits that he was totally disabled from work in any job. Dawson testified:

Q. Before we took a break, Mr. Dawson, I asked you whether or not you had testified in your workers' compensation case that you were totally disabled, unable to work in any job. Have you—

A. Yes, I did.

. . . . .

Q. I don't know if you're a doctor or not. The question is: Are you totally and permanently disabled now today?

A. I'm not sure.[6]

In *Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 383 (6th Cir.1998), the Sixth Circuit used the approach to this issue used by the Seventh Circuit in *Weigel v. Target Stores*, 122 F.3d 461, 467–68 (7th Cir.1997):

The point here is a simple one: When employees (and/or their physicians) represent that they are 'totally disabled,' 'wholly unable to work,' or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a 'qualified individual with a disability.' At the same time, because the SSA's definition of disability—as well as those of most disability insurance plans—differs materially from the ADA's definition of a 'qualified individual with a disability,' these representations are not conclusive as to the ADA issue. When a defendant in an ADA action relies on such representations as the basis for contending that a plaintiff is not a 'qualified individual,' the plaintiff is free to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or

contractual framework .... As a general matter ... absent some such affirmative showing ... the employer will be entitled to judgment as a matter of law. *Id.* at 467–68 (footnote omitted).

Plaintiff Dawson shows evidence that he performed major responsibilities of his job. In November 1993, Dawson returned to work. By January 1994, Plaintiff Dawson had returned to work full time. In February 1994, Dawson traveled to Florida for a convention. Whether as an inside sales representative or as the national sales manager, Dawson did work chiefly over the phone. This evidence, construed most favorably to Dawson, could cause a jury to find that, with accommodation, he was qualified for employment as sales manager or inside sales representative.

Upon review of the record, the Court concludes that genuine issues of material fact exist such to make summary judgment inappropriate on the issue of whether Dawson was "otherwise qualified" to perform his job. Accordingly, Defendant Qube's motion for summary judgment on Dawson's claim for disability discrimination under 42 U.S.C. § 12111, *et seq* (Count I), is denied.

**B. Claim under Ohio Revised Code § 4112.02**

■ Having determined that genuine issues of material fact exist concerning Plaintiff Dawson's qualifications and ability to perform his job despite his disability, and because similar issues remain as to the extent to whether Defendant Qube reasonably accommodated Dawson's handicap, the Court concludes that summary judgment on Dawson's state claim for disability discrimination is, similarly, not appropriate.

■ Ohio's handicap discrimination statute, Ohio Rev.Code § 4112.02, contains the essential elements of the parallel federal cause of action. Although the Sixth Circuit Court of Appeals said in *Blankenship v. Martin Marietta Energy Sys., Inc.*, 83 F.3d 153, 154–55 (6th Cir.1996), that Ohio Rev.

---

6. At a deposition given for his workers compensation claim, Dawson testified:
   A. I haven't had a job after Qube.
   Q. You have not worked at Qube since then?

   A. I am totally disabled, unable to work, unable to sit up for long periods of time. I receive my monies from social security.

Code § 4112.02 and the ADA do not share completely congruent standards, the underlying factual predicates necessary to support a claim for disability discrimination are the essentially the same. Consequently, the Court's analysis of Plaintiff Dawson's ADA claim also resolves his handicap discrimination claim under Ohio law. *Id.* at 155. See also *Hoffman v. Fidelity Brokerage Servs., Inc.*, 959 F.Supp. 452, 457 n. 1 (S.D.Ohio 1997) ("The essential elements of a claim under the ADA and the Ohio handicap discrimination statute are the same. Therefore, the case law regarding claims brought under the ADA applies equally to claims brought under the Ohio statute.").

■ Ohio Rev.Code § 4112.02(A) was enacted to prevent discrimination against persons with a handicap. It states, in pertinent part:

It shall be an unlawful discriminatory practice: (A) For any employer, because of ... handicap ... to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

*Id.* The statute's provisions should be construed liberally to accomplish this purpose. Furthermore, the intended scope of § 4112 is as broad. *Wooten*, 91 Ohio App.3d at 335, 632 N.E.2d 605.

■ The Ohio Administrative Code, § 4112-5-02(K) defines a "qualified handicapped person" as "a handicapped person who can safely and substantially perform the essential functions of the job in question, with or without accommodation ...." Reasonable accommodations include but are not limited to job restructuring, acquisition or modification of equipment or devices, realignment of duties, revision of job descriptions or modified and part-time work schedules. Ohio Adm.Code § 4112-5-08(E)(2). Accommodations for handicapped workers are unreasonable only if they place an undue hardship on the employer. The employer carries the burden to show the undue hardship. *Degnan*, 104 Ohio App.3d at 596, 662 N.E.2d 894 (citation omitted).

■ To overcome summary judgment on a claim of disability discrimination under § 4112.02, a plaintiff must show a genuine issue of material fact exists as to whether:

1) he is handicapped; 2) action was taken by his employer (at least in part) because he is handicapped; and 3) he can safely and substantially perform the essential functions of the job in question with reasonable accommodations.

*Id.* at 155. See also *Degnan v. Goodwill Industries of Toledo*, 104 Ohio App.3d 589, 595, 662 N.E.2d 894 (6th Dist.1995); *Wooten v. City of Columbus, Div. of Water*, 91 Ohio App.3d 326, 332, 632 N.E.2d 605 (10th Dist. 1993).

Here, as discussed, the Court concludes that material issues of fact exist such to make summary judgment inappropriate on the issue of Plaintiff Dawson's ability to perform his job and Defendant Qube's efforts to accommodate Dawson's disability. Accordingly, Defendant Qube's motion for summary judgment as to Count II of the complaint, is denied.

IV

■ Defendant Qube next argues that it is entitled to summary judgment on the issue of mitigation because Plaintiff Dawson has failed to look for another job to help mitigate his damages. A plaintiff must use reasonable diligence to obtain substantially equivalent employment *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The employer carries the burden to show there exist substantially equivalent positions with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). A plaintiff's diligence must be evaluated in light of the "individual characteristics of the claimant and the job market." *Id.* "An employee is not required to go to heroic lengths to mitigate his damages, but only to take reasonable steps to do so." *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir.1989) (citations omitted).

After reviewing the arguments of counsel in the instant case, the Court agrees that the "reasonableness" of Plaintiff Dawson's efforts to secure a substantially equivalent job is a matter for the jury.

For the reasons set forth above, the Court denies Defendant Qube's motion for summary judgment on Plaintiff Dawson's claims of disability discrimination under federal and state law as raised in Counts I and II, and grants summary judgment on Dawson's claim under promissory estoppel in Count III.

IT IS SO ORDERED.