[Cite as *Hardy v. The Anderson's, Ins.*, 2022-Ohio-3357.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Kevin Hardy

Court of Appeals No. L-21-1218

Appellant

Trial Court No. CI0201903683

v.

The Andersons, Inc.

**DECISION AND JUDGMENT**

Appellee

Decided: September 23, 2022

* * * * *

Marilyn L. Widman, Kera L. Paoff, and Clinton J; Wasserman, for appellant.

Renisa A. Dorner, Sarah K. Skow, and Jennifer A. McHugh, for appellee.

* * * * *

**ZMUDA, J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas

County Court of Common Pleas granting the motion for summary judgment of appellee

The Andersons, Inc. and dismissing the wrongful discharge claims of appellant Kevin

Hardy. For the reasons that follow, we affirm.[1]

## I.    Background and Procedural History

{¶ 2} Appellant, Keven Hardy (appellant) worked for appellee, The Andersons,

Inc. (appellee) for about 34 years prior to his termination in March 2019. Appellee hired

appellant as the office manager for its new Webberville, Michigan facility in 1985, when

he was 19 years old. Appellant had worked for another company dealing in agricultural

goods briefly, and he received an associate degree in agriculture with a specialty in crop

and soil science and elevator management from Michigan State University in his early

years with appellee. During the years of his employment, appellee promoted appellant to

positions of increasing responsibility and pay. In 2016, appellee promoted appellant to

senior territory manager, with territory including Michigan north of I-94, the Upper

Peninsula, and Canada (primarily Ontario). Appellant sold plant nutrient products to

distribution and dealer networks. Additionally, appellant and other territory sales

---

[1] We note the lower court proceedings were sealed, in their entirety, by the trial court, and we granted leave to file briefs under seal in this appeal, based on the presence of "sensitive business, proprietary, and commercial information; personal identifiers; employee information; and discussion of documents produced in discovery and designated confidential throughout the briefs," finding that filing under seal was the "least restrictive means available" under Sup.R. 45(E). As our decision avoids reference to sensitive matters, the decision is not filed under seal.

2.

managers sold specialty products until appellee moved those products to a specialty products salesperson.

{¶ 3} Appellee provided appellant with a vehicle, computer, iPad, and cell phone to use in performing his duties, and appellant had discretion regarding his day-to-day activities. As an exempt employee, appellant did not record his daily hours or log his activities, but was merely required to record time off through a human resources program. Appellant's wife was from the Dominican Republic, and he spent time there each year from the time they married in 2007.

{¶ 4} In 2017, two events of significance occurred. Appellant purchased a second home in the Dominican Republic and in June 2017, appellee promoted Andrew Spahr as supervisor for appellant and other territory managers. Spahr was much younger than appellant, and his sales-based training and experience had been earned after he graduated with a bachelor's degree in political science and communications. Spahr began his tenure with appellee as a purchasing agent, and he participated in training and development programs offered by appellee. His promotion in 2017 was the first time Spahr had supervised a significant number of staff.

{¶ 5} Spahr conducted appellant's year-end performance review based on goals established with appellant's previous supervisor, and gave appellant an overall positive performance review. Together, Spahr and appellant identified goals for the next year,

3.

with specific targets identified relative to new customers, improved sales, and growth opportunities.

{¶ 6} In late 2017, appellee named Jeff Blair as Spahr's new boss and president for appellant's group. Blair announced fundamental changes to sales strategy, and the company adopted new reporting requirements, which included weekly action reports and use of a new program for collecting data on the market and customers to use in processing current sales and planning future strategy. Appellant did not consistently submit reports, believing he had no requirement of weekly reporting, and he acknowledged a learning curve in adapting to use of the new computer system.

{¶ 7} Spahr held a meeting to discuss new strategies in the fall of 2018. Appellant and other sales managers attended, and after appellant offered his opinion regarding the new strategies, he alleged Spahr referred to him as a "dinosaur." Appellant perceived Spahr's attitude toward him as dismissive, and felt Spahr spent more time with other, younger territory managers. Appellant did not voice his concerns to anyone at the company at the time.

{¶ 8} Around the same time, appellant told Spahr he needed to go the Dominican Republic for a personal emergency, to save his marriage. Appellant stayed in the Dominican Republic from September 8 until October 25, 2018, but did not log vacation during that time. Spahr claimed that, in response to appellant's notice regarding leaving the country, he addressed time off with appellant and discussed vacation policy for time

4.

out of the territory and coverage for appellant's territory.  Appellant did not recall any discussion regarding covering his customers during his absence from the territory, and also could not recall whether he had notified Spahr of other trips to the Dominican Republic.  Instead, appellant admitted that he told others at the company that he vacationed in the Dominican Republic, and when he was out of country, customers would often contact the sales office at Webberville instead of calling him.

{¶ 9} In November 2018, appellant informed appellee's IT department that he needed an international phone plan because he vacationed in the Dominican Republic, without also claiming he worked remotely.  Staff with the IT department contacted appellant about his use of his company cell phone to make international calls.  Appellant expressed confusion as to why he did not have an international plan, pointing out he vacationed in the Dominican Republic and liked to stay available even on vacation.  Appellant's Canadian calls were included in his current phone plan and were not at issue.  At appellant's request, and without informing Spahr, appellant was placed on an international plan to permit in-plan phone use from the Dominican Republic.  Based on the record, it appeared IT did not require authorization from Spahr or any other supervisor to change appellant's phone plan.

{¶ 10} Appellant resided in the Dominican Republic from December 5, 2018, until January 13, 2019, with a week of that time logged as vacation, coinciding with the date Spahr proposed for a face-to-face meeting to discuss appellant's annual performance

5.

review. Appellee was unaware that appellant was out of country, and the parties disagree whether Spahr and appellant met by phone to discuss appellant's performance. In place of the face-to-face meeting, Spahr indicated he communicated with appellant by phone, and Spahr rated appellant's overall performance as "below expectations." Appellant disagreed, claiming he never spoke with Spahr, but responded in writing within the self-assessment part of the review, indicating he met all but one of the targets previously established as his yearly goals. Appellant acknowledged he fell below expectations regarding the goal to reengage with prior customers to reestablish lost market share, but argued he signed new accounts and increased sales.

{¶ 11} Appellant believed he could address any deficiencies in meeting goals with more time. Appellant requested reassignment of his specialty sales, to free up his time, and noted that Spahr had reassigned specialty products for other territory sales managers. Spahr agreed to reassign appellant's specialty sales duties to another salesperson within the company and appeared to agree that more time would lead to better results. In his review of appellant, Spahr indicated he "look[ed] forward to helping [appellant] improve" during the next year, referencing the company's growth strategy.

{¶ 12} Appellant acknowledged the review but appealed his poor rating to human resources, asserting Spahr had arbitrarily "moved the goal posts" in discounting the goals he did achieve and rating him "below expectations" regarding goals he actually met. In support of his poor evaluation, Spahr indicated his own assessment indicated appellant

6.

"didn't reach the threshold of exceeding expectations or achieving expectations in territory." Spahr discounted appellant's new accounts as insignificant and discounted appellant's reported increase in sales, attributing the increase to internal sales and not appellant's efforts. Spahr was aware that appellant appealed his poor review, but did not have any recollection of a resolution of that appeal, prior to appellant's termination. It is undisputed that Spahr did not follow the poor review with any remedial measures or disciplinary action.

{¶ 13} After returning to the States on January 13, 2019, appellant traveled to the Dominican Republic again on February 6, 2019. He was in the Dominican Republic in early March when Spahr called to check in. Spahr heard an international ringtone, and while he and appellant dispute the exact wording of their exchange, they agree that appellant told Spahr he was driving down the road and working. Spahr believed appellant indicated he was *visiting* customers. Appellant contends he would not have told Spahr he was *visiting* customers, but likely said he was *talking* to customers because he was driving in the Dominican Republic and not in his territory. However, appellant does not claim that Spahr knew, or should have understood, that he was in the Dominican Republic. Spahr became suspicious and asked the company IT department to trace the whereabouts of appellant's cell phone records and IP addresses, thinking appellant was abusing the vacation policy.

7.

**{¶ 14}** After Spahr received confirmation that appellant was in the Dominican Republic for an extended period and had not submitted vacation time, he emailed appellant and requested an in-person meeting the next day at the company headquarters in Maumee, Ohio. Appellant responded, by email, with a request for a video meeting, indicating he had prior commitments for the next few days. Appellant did not share the fact that he was out of the country. Spahr arranged a 9:00 a.m. phone call with appellant for March 13, 2019.

**{¶ 15}** At the scheduled time, Spahr called appellant with human resources listening to the call, and asked appellant about his whereabouts. Appellant recounted the conversation as follows:

> [Spahr] had stated at that time that the phone had a sound of an international ring to it. I told him that that was not coincidental, because I was in the Dominican Republic.
>
> He said, You're there now;
>
> And I said, Yes, I'm here now.
>
> I offered that before he ever asked. I don't know if that conversation was recorded or not, but [human resources] can answer to that, as [they were] on that conversation as well.
>
> And he said, Well, we've seen that you have call information, telephone information, computer information from accessing from the

8.

Dominican Republic, and since you can't conduct your job from there, we're going to terminate you.

[Human resources asked appellant whether he understood.]

And I said, I understand but I disagree with [Spahr's] statement that it's not possible for me to do my job from my home office in the Dominican Republic.

And at that point the conversation pretty well terminated.

{¶ 16} After termination, Spahr learned more details regarding appellant's extended periods of residence in the Dominican Republic, and drew conclusions on the impact of absences from the territory on appellant's work. For example, Spahr learned that appellant had turned down meetings with customers because he was in the Dominican Republic, and he often relied on other employees to cover in-person tasks during his absences from the territory. Some customers informed Spahr that appellant was unavailable when they attempted to reach him with questions or concerns.

{¶ 17} Immediately after the termination, Spahr performed appellant's job duties in his territories for a couple of months. Appellee posted a position within the company, seeking internal candidates, and did not replace appellant with another senior territory manager. Instead, appellee hired an account representative for appellant's Michigan territory, and transitioned other duties to other territory managers.

**{¶ 18}** On September 6, 2019, appellant filed a complaint alleging age discrimination in violation of R.C. 4112.02. Appellee filed an answer, denying the allegations, and soon after moved for summary judgment. Appellant opposed summary judgment.

**{¶ 19}** On October 15, 2021, the trial court granted summary judgment, finding appellant failed to satisfy his *prima facie* burden of demonstrating he was qualified for the position and was replaced by a person outside the protected class. The trial court did not reach the issues of legitimate business reasons for termination or pretext.

**{¶ 20}** Appellant filed a timely appeal.

## II.    Assignment of Error

**{¶ 21}** In challenging the judgment, appellant asserts a single assignment of error with three issues presented for review:

> The Trial Court committed prejudicial and reversible error by ruling, as a matter of law, that Appellant failed to establish a prima facie case of age discrimination.

> 1. Does a genuine issue of material fact exist as to whether Appellant met the "minimum qualifications," as set forth in *McDonnell Douglas,* for the third element of Appellant's prima facie case?

> 2. Does a genuine issue of material fact exists as to whether Appellant was replaced by someone outside his class and/or whether a

comparable, substantially younger employee outside his protected class was treated more favorably than Appellant, both relative to the fourth element of Appellant's prima facie case?

3. Did Appellant meet his burden of production as to whether Appellee's asserted legitimate business reason for terminating Appellant was pretext for unlawful age discrimination?

### III. Analysis

{¶ 22} The trial court entered summary judgment and dismissed the discrimination claim, finding appellant failed to demonstrate a prima facie case of discrimination. We review this decision de novo, applying the same standard as the trial court. (Citation omitted) *Degnan v. Goodwill Industries of Toledo,* 104 Ohio App.3d 589, 594, 662 N.E.2d 894 (6th Dist.1995). Summary judgment is proper when no genuine issue of material fact remains, and reasonable minds can reach only one conclusion after construing the evidence most favorably for the nonmoving party. Civ.R. 56(C).

{¶ 23} The party seeking summary judgment bears the initial burden of demonstrating the absence of issues of fact. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), at the syllabus. Once the moving party meets this burden, the nonmoving party has a reciprocal burden to produce evidence to demonstrate issues of fact regarding the essential elements of the case. *Degnan* at 594, citing *Wing v. Anchor*

11.

*Media, Ltd. of Texas,* 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), paragraph three of the syllabus.

{¶ 24} As an initial matter, we note appellant was an at-will employee. "The general rule in Ohio is that, in the absence of a contract, individuals are employed on an 'at-will' basis, and employers and employees have the right to terminate the employment relationship for any reason or no reason (as long as it is not an illegal reason, i.e., proscribed discrimination)." *Howell v. Whitehurst Co.,* 6th Dist. Lucas No. L-05-1154, 2005-Ohio-6136, ¶ 35. Pursuant to R.C. 4112.02(A), it is unlawful for any employer to discriminate or discharge a person based on their age, without just cause.

{¶ 25} Appellant alleges age discrimination in his termination. There is rarely direct evidence to support a prima facie case of employment discrimination. "Because of the difficulty of proving a discrimination claim, especially where there is no direct evidence of discriminatory motive, the Supreme Court created an analytical framework to address 'the order and allocation of proof' in such cases." *Williams v. Akron,* 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 9, quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a claimant has the initial burden of demonstrating a prima facie case of discrimination. *Williams* at ¶ 10.

{¶ 26} "To prevail in an employment discrimination action, the plaintiff must prove discriminatory intent." *Perez v. Theller,* 6th Dist. Sandusky No. S-10-053, 2011-

12.

Ohio-2176, ¶ 10, citing *Mauzy v. Kelly Services, Inc.,* 75 Ohio St.3d 578, 583, 664 N.E.2d 1272 (1996). In this case, appellant alleged age discrimination in his firing, referencing the incident in which Spahr allegedly called him a dinosaur and instances in which appellant perceived other, younger territory managers had received preferential treatment. Appellant presented no evidence, however, linking discriminatory statements or conduct to his firing, necessary to demonstrate age discrimination by direct proof. Appellant, accordingly, needed to establish a prima facie claim indirectly. *Peters v. Rock-Tenn Co.,* 180 Ohio App.3d 10, 2008-Ohio-6444, 903 N.E.2d 10, ¶ 10 (5th Dist.). To demonstrate a prima facie case of age discrimination, appellant needed to demonstrate that he was a member of a protected class, that he suffered an adverse employment action, that he was qualified for the position, and that he was replaced by a person of a substantially younger age. *Perez* at ¶ 10, citing *Coryell v. Bank One Trust Co.,* 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 20 (additional citations omitted.).

{¶ 27} Once a claimant establishes a prima facie case, a presumption of unlawful discrimination by the employer arises. *Williams* at ¶ 11, citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden then shifts to the employer to demonstrate "a legitimate, nondiscriminatory reason" for the adverse action against the employee. *Williams* at ¶ 12, quoting *Burdine* at 254. If the employer fails to present evidence, and "reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case," then

13.

the matter must be submitted to a jury or fact finder. *Williams* at ¶ 13, quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509-510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis sic.).

{¶ 28} Should the employer meet its burden of producing evidence, however, demonstrating a legitimate reason, the employee must then demonstrate, by a preponderance of the evidence, that the proffered legitimate reason was a pretext for discrimination. *Williams* at ¶ 14, citing *Burdine* at 253, citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 407. Demonstrating pretext requires proof that the proffered reason was false and the real reason was discrimination. *Id.* "A case that reaches this point is decided by the trier of fact on the ultimate issue of whether the defendant discriminated against the plaintiff." *Id.*

{¶ 29} The parties do not dispute that appellant satisfies the first two prongs of the *McDonnell Douglas* framework, that appellant was a member of a protected class and had been discharged. Instead, the parties dispute whether appellant satisfied the third and fourth prongs, demonstrating he was qualified for his position and that he was replaced by a person from outside the protected class or that a non-protected, comparable employee enjoyed better treatment. Appellant also argues that, presuming he demonstrated a prima facie discrimination case, he met his burden of production regarding the stated reason or reasons for his termination as pretext. We address each argument in turn.

14.

**A. Issues of fact remain as to whether appellant was qualified for the position.**

{¶ 30} In the first issue presented under appellant's sole assignment of error, appellant argues the trial court improperly considered his qualification for the position under the "legitimate expectations" test, rather than the "minimum objective qualifications" test adopted by other jurisdictions, outside Ohio. In doing so, appellant argues the trial court improperly considered evidence of appellee's proffered reason for termination as part of appellant's prima facie case, prematurely shifting the burden in appellee's favor.

{¶ 31} Appellant advocates for a departure from our precedent in addressing his qualifications as part of a prima facie claim. In addressing the third element of a prima facie claim, we previously held that "[i]n order to demonstrate qualifications for a position, a plaintiff must show [he] has the capability of performing the work and that [he] is meeting the employer's legitimate expectations." *Wilson v. Toledo Public Schools,* 6th Dist. Lucas No. L-02-1107, 2003-Ohio-482, ¶ 35, citing *Landon v. ABB Automation, Inc.,* 11th Dist. Lake No. 2001-L-154, 2002-Ohio-3376, ¶ 10; *Ebright v. Video News Super Stores,* 6th Dist. Lucas No. L-00-1369, 2001 WL 771008 (Jul. 6, 2001); *Smith v. Greater Cleveland Regional Transit Authority,* 8th Dist. Cuyahoga No. 78274, 2001 WL 605405 (May 24, 2001); *see also Perez v. Theller,* 6th Dist. Sandusky No. S-10-053, 2011-Ohio-2176, ¶ 19. We find no basis to reject this precedent.

15.

**{¶ 32}** Considering appellant's education and long tenure with appellee in positions of increasing responsibility, he was capable of performing the work. As to legitimate expectations, we consider this factor objectively, independent of any consideration of appellee's proffered reason for termination. *McGlumphy v. Cty. Fire Protection, Inc.,* 2016-Ohio-8114, 74 N.E.3d 986, ¶ 23-25 (11th Dist.); *see also Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000).

**{¶ 33}** Appellee argues that it had a legitimate expectation that appellant would work within his sales territory, conducting face-to-face meetings with customers. Because appellant was purporting to work remotely from outside his territory, appellee argues, appellant did not meet the legitimate expectation for the job at the time of his termination. This argument requires consideration of the proffered reason for firing appellant, however, or the conduct appellee claimed as meriting termination. The trial court delved into these facts in determining appellant was not qualified, based on his alleged misconduct in purporting to work from the Dominican Republic.

**{¶ 34}** Considering the evidence, appellee had no policies regarding minimum personal contact in customer interactions or prohibiting remote work. Instead the record demonstrates appellee issued appellant technology that would permit other than face-to-face, in-person work, including a laptop, computer, cell phone, and internet access to company systems and software. Furthermore, demonstrating a prima facie case does not present an onerous burden, as a prima facie case merely permits a rebuttable presumption

of discriminatory treatment. Appellant need only demonstrate that he was capable and could meet legitimate employer expectations. *Stookey v. South Shore Transp. Co.,* 6th Dist. Erie No. E-11-044, 2012-Ohio-3184, ¶ 14, citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 35} Here, we find no clear expectation that work had to be performed only within the assigned territory, sufficient to grant summary judgment on this issue. Moreover, while a trier of fact could ultimately find appellant's conduct merited termination, that is not the issue relative to a prima facie case. Based on the record, reasonable minds could find that appellant was qualified for the job based on objective qualifications and expectations. The trial court therefore erred in considering facts related to appellee's stated reason for termination in determining appellant did not meet this element of a prima facie case.

### B. Appellant was not replaced by a substantially younger employee or subjected to disparate treatment from a similarly situated employee.

{¶ 36} Appellant next argues that he demonstrated he was replaced by a younger employee and, in the alterative, subjected to disparate treatment when compared to another, younger territory manager. To demonstrate the fourth element of a prima facie claim, appellant must demonstrate genuine issues of fact regarding replacement by a substantially younger employee or disparate treatment when compared to similarly situated employees. *Stookey* at ¶ 10-11.

17.

**{¶ 37}** As to replacement, appellant must demonstrate evidence that another employee replaced him by taking on a substantial portion of his duties. *Ksiazek v. Columbiana Cnty. Port Auth.,* 2021-Ohio-1267, 171 N.E.3d 394, ¶ 50 (7th Dist.), citing *Mittler v. OhioHealth Corp.,* 10th Dist. Franklin No. 12AP-119, 2013-Ohio-1634, ¶ 25 (additional citation omitted.). Replacement requires hiring or reassigning another employee to perform those duties, and merely redistributing work among other employees, in addition to their other duties, does not constitute a replacement. *Id.,* citing *Nist v. Nexeo Sols., L.L.C*., 10th Dist. Franklin No. 14AP-854, 2015-Ohio-3363, ¶ 35, citing *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992).

**{¶ 38}** In this case, appellant presented evidence that his job duties were initially assumed by Spahr, in addition to Spahr's management responsibilities. At the time of his termination, appellee had already reassigned specialty products to another employee so that appellant could focus on primary products. As to appellant's job responsibilities, at the time of his termination, Spahr testified regarding coverage as follows:

> I was the direct replacement for day-to-day management over the course of a couple months following his termination. I worked directly with customers. And we posted the role and received applications for that job, and consistent with our statement of principles, promoted an internal

employee[2] who was in the developmental role in our Champaign facility to an account rep role in Michigan. It was not a direct replacement for [appellant's] role.

Spahr testified that he covered the territory for several months, spanning "the time that we – that [appellant] was separated from the company to the time that we had territory managers sufficiently trained in the territory to take care of the business." Spahr indicated that by October/November of 2019, "we had transitioned most of the day-to-day communications."

{¶ 39} "[A] person is not replaced when another employee is assigned to perform the [claimant's] duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). However, a person *is* replaced if another employee is hired to perform a substantial portion of their prior duties. *Ksiazek,* 2021-Ohio-1267, 171 N.E.3d 394, ¶ 50 (7th Dist.), citing *Ryncarz v. Belmont Cty. Court of Common Pleas Juvenile Court Div.,* 2017-Ohio-4423, 93 N.E.3d 190, ¶13 (7th Dist.). Based on the record, Spahr hired a substantially younger woman to a different position (account representative) than the job held by appellant, and assigned only part of appellant's territory to this new position, with the remaining responsibilities

---

[2] The newly hired account representative was a 26-year-old woman.

19.

"transitioned" to other employees. In response to this evidence, appellant presented no evidence demonstrating the position of account representative was the same position he held, and he was therefore replaced by the younger account representative, or that the new employee performed a substantial portion of his territory sales manager job. Without such evidence, appellant fails to demonstrate issues of fact regarding replacement.

{¶ 40} In the alternative, appellant argues that Spahr treated appellant less favorably than another, younger territory sales manager, L.P. The fourth element of a prima facie claim may be demonstrated through evidence of better treatment by the employer of a "comparable non-protected person." *Parries v. Makino, Inc.,* 148 Fed.Appx. 291, 296 (6th Cir.2005), quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-583 (6th Cir.1992). A comparable person is one who is "similarly-situated in all relevant aspects[.]:" *Id.*, citing *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994).

{¶ 41} Appellant argues that L.P. received more favorable treatment, because Spahr approved of L.P. living outside his sales territory. To be similarly situated, appellant and L.P. must have reported to the same supervisor, have worked under the same standards, and have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment

20.

of them for it." *Stookey,* 6th Dist. Erie No. E-11-044, 2012-Ohio-3184, at ¶ 11, citing *Mitchell* at 583.

{¶ 42} Appellant argues that his work from his home office in the Dominican Republic is no different from L.P.'s work from his home office, in Indianapolis, Indiana. L.P.'s territory included northern Indiana. The record demonstrated no company policy requiring a sales manager to live within their assigned territory, and no company policy addressing the requirements governing remote work. The evidence showed that sales managers were issued technology that would permit remote work, and territory sales managers did not report to a company office building, but were instead "based" out of the Maumee office while assigned to their sales territory. Appellant testified that he worked out of his home offices, either in Michigan or the Dominican Republic, but never let Spahr know he was out of the country for weeks at a time. Appellant testified that he did not need to notify Spahr or appellee of his extended absences from his territory.

{¶ 43} Appellant's testimony regarding his work history with appellee contradicts this position. Appellant, in recounting his various postings within the company, testified that he relocated when he took on new territory, so he would be near his work. When he was first hired in 1985, appellant relocated from Ohio to the Webberville area in Michigan, near the facility where he worked. Appellee transferred appellant to Illinois for six years, and appellant moved there with his family. Then in 2001, appellee assigned appellant to territory in Michigan. Regarding this move, appellant testified:

21.

So I moved back to Michigan for [appellee] to manage this territory and grow this territory. We agreed where I was – where I was going to reside. I resided in Gaylord, Michigan.

And then after – and in 2001, my family was still in Illinois, and I was commuting on the weekends to see my wife and four children from January the 1st to August.

And then my family moved up in August. We moved into a house, then, instead of my apartment, in Gaylord, Michigan. We lived there for a couple of years. And then we – we built a house in Johannesburg and moved into that in December of 2005.

The difference in the distance between Gaylord and Johannesburg is 10 to 12 miles.

According to appellant, from 2001 until 2016, he was a territory sales manager living in Michigan, and in 2016 he was named a senior territory sales manager, with the same duties and territory. Appellant and his first wife divorced during that time, and in 2007, appellant married his second wife, who was from the Dominican Republic. While appellant testified that it was known within the company that he had purchased a second home in the Dominican Republic, appellant also acknowledged that he never informed Spahr or anyone else at the company that he resided in the Dominican Republic for a

22.

significant portion of the year, and that he required "a respectable amount of notice" to be available for in-person meetings.

{¶ 44} Considering the record, appellant's conduct does not equate to L.P.'s conduct, but instead demonstrates "differentiating or mitigating circumstances that would distinguish [the] conduct or the employer's treatment of them for it." *Stookey* at ¶ 11, citing *Mitchell,* 964 F.2d at 583. L.P. resided mere hours in driving distance from his territory. Appellant, however, left the continental United States and lived on an island almost 2,000 miles away.

{¶ 45} Appellant also acknowledged that L.P. had permission to live outside his territory. Appellant testified:

> [A]though [L.P.] was new, [Spahr] was also new. And he was also –
> like I said, in conversation that I had with [L.P.], *he was told that*, you
> know, it was okay for him to reside outside of his territory' where,
> obviously, based on, you know, what brought us here today, it was not okay
> for me. [emphasis added.].

In contrast to L.P.'s circumstances, appellant did not request permission or even raise the issue with Spahr. Instead, appellant relocated to the Dominican Republic for weeks at a time without informing Spahr, his supervisor, of his new working arrangement. Furthermore, the one time he did inform Spahr he was going to the Dominican Republic, to "save his marriage," Spahr discussed vacation policy and coverage for the territory, but

23.

appellant failed to log any vacation time for that trip or even inform Spahr of the duration of his trip.

{¶ 46} Finally, appellant argues that Spahr spent time with L.P. in L.P.'s territory but did not spend time with appellant in his territory. The record demonstrates appellant, himself, spent limited time in his own territory. Appellant also points to no facts to demonstrate he desired such attention from Spahr, or that L.P.'s time with Spahr supported an inference of favoritism, considering appellant acknowledged L.P. was a new hire, learning his job and "getting to know the customers."

{¶ 47} In order to find a genuine issue of fact, we must construe the evidence in appellant's favor and make a reasonable inference regarding that evidence. *Harless,* 54 Ohio St.2d at 66, 375 N.E.2d 46. "An inference is reasonable when it is drawn from facts in evidence[.]" (Citations omitted) *Woodside Mgt. Co. v. Bruex*, 2020-Ohio-4039, 157 N.E.3d 295, ¶ 72 (9th Dist.). In this case, appellant relies on facts that provide no support for his claims of disparate treatment.

{¶ 48} As previously noted, the burden of demonstrating a prima facie case is not onerous. *Stookey* at ¶ 14, citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1087, 67 L.Ed.2d 207. "In determining whether an allegedly comparable employee is similarly situated, the ultimate question is whether 'all of the *relevant* aspects of [his] employment situation were 'nearly identical' to those of the [comparator's] employment situation.'" (Emphasis sic.) *Allen v. Ohio Dept. of Job & Family Svcs,* 697 F.Supp.2d 854, 887 (S.D.Ohio 2010),

24.

citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir.1998); *Clayton v. Meijer*, 281 F.3d 605, 611 (6th Cir.2002).

{¶ 49} Both appellant and L.P. had a home outside their assigned territory. But L.P. lived close to his territory, and appellant resided – for much of the year – in the Dominican Republic. Based on appellant's testimony, he understood that L.P. was told he could reside outside his territory. In contrast, appellant did not discuss his residence with Spahr, despite acknowledging a history of relocations for the company during his career to live near his territory. Therefore, despite the less than onerous burden in demonstrating a prima facie case, appellant failed to demonstrate issues of fact regarding disparate treatment, presenting no evidence to support a reasonable inference of indistinguishable conduct and different treatment.

{¶ 50} Upon due consideration of the record, appellant failed to present evidence to demonstrate disputed issues of fact regarding the fourth prong of the *McDonnell Douglas* test. Accordingly, we find the trial court did not err in its determination that appellant failed to demonstrate a prima facie claim of age discrimination.

### C. Lack of dispute regarding one proffered basis for termination precludes finding of pretext based on appellee's honest belief.

{¶ 51} While our finding regarding the prima facie claim is dispositive, the parties have raised and addressed the issue of pretext. Accordingly, we address pretext in kind.

{¶ 52} Had appellant demonstrated a prima facie claim, appellee would bear the burden of demonstrating "some legitimate, nondiscriminatory reason for the employee's

termination." *Stookey* at ¶ 15, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. To this end, appellee introduced evidence articulating a nondiscriminatory reason for termination: appellant's alleged dishonesty in taking extended absences from his sales territory and appellant's extended absences from his sales territory. Appellant does not dispute his lengthy absences but argues no dishonesty because he never affirmatively lied to Spahr or the company regarding his whereabouts. Instead, appellant argues this reason was mere pretext for age discrimination.

{¶ 53} Appellant argues that appellee's proffered reason for termination was pretext for discrimination. Typically, pretext is demonstrated in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles v. S. Cent. Human Resource Agency, Inc.,* 946 F.3d 883, 888 (6th Cir.2020), quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir.2009); *see also Gerding v. Girl Scouts of Maumee Valley Council, Inc.,* 6th Dist. Lucas No. L-07-1234, 2008-Ohio-4030, ¶ 26.

{¶ 54} In opposing summary judgment in the trial court, appellant argued the evidence demonstrated that appellee's proffered reason for termination was false, or lacked a factual basis, and therefore created a question regarding pretext when combined with Spahr's subjective, poor evaluation and ageist comment about appellant. Appellant

26.

focused on the reason provided at the time of termination, noting appellee proffered additional reasons after obtaining new information, post-termination.

{¶ 55} Appellant's evidence must demonstrate that issues of fact remain regarding the factual basis for his termination to survive summary judgment. *Perez v. Theller,* 6th Dist. Sandusky No. S-10-053, 2011-Ohio-2176, ¶ 20. Appellant referenced his work while in the Dominican Republic and the lack of any written policy governing remote work. He further noted that his second home in the Dominican Republic was known to appellee, and he did not lie about his whereabouts, but answered truthfully when Spahr asked him on the day he was terminated. Appellant further cited Spahr's "dinosaur" reference and Spahr's "below expectations" rating of appellant for sales goals appellant actually met and exceeded.

{¶ 56} In response, appellee characterized appellant's conduct as evasive, arguing appellant concealed his whereabouts rather than volunteering to Spahr that he was in the Dominican Republic for extended periods. Appellee also argued that appellant failed to use vacation time while in the Dominican Republic and outside his sales territory, rejecting appellant's claims of working remotely from his Dominican Republic home office during those weeks, so far from his territory and his customers. In arguing the termination was not pretext for discrimination, appellee relies on the "honest belief" doctrine, articulated in *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998).

27.

{¶ 57} The "honest belief" doctrine, in the context of discrimination cases, requires consideration of whether an employer acted on a good faith belief and had a reasonable basis for its adverse action. *Id.* "Thus * * * in order for an employer's proffered non-discriminatory basis for its employment action to be honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. If the employer is unable to produce such evidence to support its employment action, then the 'honest belief' rule does not apply." *Id.* at 807.

{¶ 58} In this case, the parties appear to agree on at least one pertinent fact regarding the termination, that appellant spent many weeks of the year in the Dominican Republic, away from his sales territory. Whether appellant lied by omission is irrelevant, considering the territory sales manager's job responsibilities. Appellee demonstrated reliance on a reasonable belief that appellant had extended absences from his sales territory without notifying appellee. In response, appellant argued the lack of a specific policy governing the percentage of time spent within the territory. Appellant's argument, however, failed to refute the fact of his absence from the continent, demonstrated by the record evidence as a departure from his history of residing near his territory. Accordingly, appellee demonstrated a lack of issues of fact relative to an "honest belief" underlying the basis for termination.

28.

**{¶ 59}** Therefore, considering the record and construing the evidence in appellant's favor, we find no issues of fact remain regarding pretext, as well as appellant's prima facie case for age discrimination. Accordingly, we find the trial court did not err in granting summary judgment in favor of appellee, and appellant's sole assignment of error is not well-taken.

## IV. Conclusion

**{¶ 60}** Based on the foregoing, we find substantial justice has been done and we affirm the entry of summary judgment in favor of appellee by the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

Thomas J. Osowik, J. _____

Gene A. Zmuda, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.